Simo v. Home Health & Hospice Care     CV-94-206-JD  06/30/95 P
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Glenda Simo

        v.                                    Civil No. 94-206-JD

Home Health & Hospice Care


                          O R D E R


     The plaintiff Glenda Simo brings this action under the

Rehabilitation Act of 1973 ("the Act"), 29 U.S.C. § 794, to

recover losses related to her employment with, and ultimate

termination by, her former employer, defendant Home Health &

Hospice Care ("HHHC").  The case is scheduled for a bench trial

on July 11, 1995.  Before the court is the defendant's motion for

summary judgment (document no. 23).


                       Background[1]

I.   Plaintiff's Employment History

     The plaintiff was hired by HHHC on August 8, 1988, as a

homemaker for elderly and infirmed patients.  At that time the

plaintiff told the defendant that she suffered from post

traumatic stress disorder ("PTSD") and, as a result, was

incapable of working alone with a man in a closed environment.

_____

     [1]The court's recitation of the facts relevant to the instant
motion are either not in dispute or have been alleged by the
plaintiff.

The plaintiff requested that she only be assigned to work in homes occupied by females.

The plaintiff initially received strong job performance evaluations and at least one salary increase. In March, 1990, the plaintiff was injured in an automobile accident which left her unable to work for ten weeks. Following her return to work on June 4, 1990, the plaintiff was subjected to various job requirements not imposed on the other homemakers and was required to work in a home occupied by a male patient. As a result, the plaintiff suffered significant anxiety and an exacerbation of her PTSD symptoms.

On May 9, 1991, HHHC terminated the plaintiff for "fraudulent behavior regarding the time sheets" and "gross job incompetence." Complaint at ¶ 12. The plaintiff alleges that the defendant violated the Act by failing to make reasonable accommodations for her condition and by ultimately terminating her employment.

II. Receipt of Permanent Disability Benefits

In January 1993, the plaintiff applied for and received permanent disability benefits from the Social Security Administration ("SSA"), with benefit payments retroactive to the day she was terminated by HHHC. Motion for Summary Judgment,

2

Appendix, Plaintiff's Response to Defendant's First Set of Interrogatories ("Plaintiff's Answer to Interrogatories") at 24. In response to interrogatory 19, the plaintiff testified as follows:

19. Please state whether you are now receiving or have ever received any disability, pension, income, insurance, or any workman's compensation payments from any agency, company, person, corporation, state, or government, and if your answer is affirmative, please state:

a)   The entity making any such payments.
b)   Inclusive dates of any such payments.
c)   A description of the nature and extent of any disability for which such payments were made.
d)   A description of how such injury occurred or disability arose.
f)   Whether you now have any disability as a result of such injury or disability.
g)   If your answer to E is in the affirmative, the nature and extent of such disability.
h)   Whether or not you had any disability at the time of the alleged occurrence.
i)   If your answer to G is in the affirmative, the nature and extent of such disability.

ANSWER:

A.   Social Security - DSS payments
B.   January 1993 (retroactive to 5/9/91)
C.   Post traumatic stress disorder and chronic pain syndrome
D.   PTSD from sexual victimization; chronic pain syndrome from car accident on 3/26/90
E.   NO QUESTION
F.   I am on full disability due to PTSD.  I receive DSS benefits
G.   Not applicable - No E
H.   I was gainfully employed even though I had PTSD and myofacial pain disorder
I.   N/A

3

_Id._ at 24. In response to interrogatory number 31, the plaintiff testified as follows:

> 31. Please advise if you have received any permanency impairment rating. If so, please provide a description and date of rating of any such permanency ascribed to you and the identity of the health care provider rendering such opinion.
>
> ANSWER:
>
> Social Security has rendered me permanently disabled due to PTSD and chronic pain syndrome. January, 1993 (retroactive to 5/9/91).

_Id._ at 36. In response to interrogatory number 34, the plaintiff testified as follows:

> 34. If you are presently unemployed please describe what efforts have been made to find gainful employment.
>
> ANSWER:
>
> Totally disabled. Unable to work.

_Id._ at 39. The plaintiff has sworn to the accuracy of her written interrogatory responses. _Id._ at 50.

In connection with her application for social security benefits, the plaintiff stated in writing that "I BECAME UNABLE TO WORK BECAUSE OF MY DISABLING CONDITION ON MAY 09, 1991," and "I AM STILL DISABLED." Defendant's Supplemental Memorandum of Law in Support of Motion for Summary Judgment ("Supplement to Motion for Summary Judgment"), attachment to Affidavit of Lisa M. Herlehy 1, 3.

4

<u>Discussion</u>

In its motion, the defendant asserts that the plaintiff's application for and receipt of permanent disability benefits from the SSA precludes her, as a matter of law, from satisfying the "otherwise qualified handicapped individual" element of her instant claim under the Rehabilitation Act.  <u>See</u> Supplement to Motion for Summary Judgment (citing <u>August v. Offices Unlimited, Inc.</u>, 981 F.2d 576, 581 (1st Cir. 1992); <u>Kennedy v. Applause, Inc.</u>, 1994 W.L. 740765 (C.D. Cal. 1994)).

The plaintiff, acknowledging her permanent disability and inability to work, responds that the defendant's discriminatory conduct caused or exacerbated her condition and, as such, the receipt of benefits does "not bar employee's claim for back pay and reinstatement if employer violated the Rehabilitation Act." Plaintiff's Memorandum of Law in Objection to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum in Opposition to Summary Judgment") at 4.  The plaintiff further asserts that the collateral source doctrine permits her to recover more than once for her injury so long as each recovery comes from a different source.  <u>Id.</u> at 3 (citing <u>Mason v. Association for Independent Growth</u>, 817 F. Supp. 550, 556 (E.D. Pa. 1993); Restatement (Second) of Torts § 920 (A)(2) (1979)).

5

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993), cert. denied, 115 S. Ct. 56 (1994) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990), cert. denied, 112 S. Ct. 2965 (1992)). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere

6

allegation or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).


I.    Rehabilitation Act

The Rehabilitation Act, section 504 provides:

> No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C.A. § 794 (West 1985, as amended by Act of Oct. 21, 1986; Act of March 22, 1988; and Act of Nov. 7, 1988) (later amended by 29 U.S.C.A. § 794 (West Supp. 1995)).[2]  To prevail under section 504, a plaintiff bears the burden of proving that (1) she was handicapped for purposes of the Act; (2) she was otherwise qualified to perform the job or participate in the program; (3) she was excluded from the job or program solely because of her handicap; and (4) the job or program receives federal funding. E.g., Joyner v. Dumpson, 712 F.2d 770, 774 (2d Cir. 1983); Gill

---

[2]The parties do not dispute that the plaintiff's action is governed by section 504 as it existed prior to the 1991 civil rights amendments.  See Simo v. Home Health & Hospice Care, No. 94-206-JD, slip op. at 2-3 (D.N.H. June 19, 1995).

7

v. Franklin Pierce Law Ctr., No. 93-241-SD, slip op. at 8-9 (D.N.H. May 17, 1995).

An otherwise qualified handicapped employee is one who, "with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others . . ." Taub v. Frank, 957 F.2d 8, 10 (1st Cir. 1992) (quoting 29 C.F.R. § 1613.702(f)); see School Bd. of Nassau County v. Arline, 107 S. Ct. 1123, 1131 n. 17 (1987) (quoting Southeastern Comm. College v. Davis, 99 S. Ct. 2361, 2367 (1979)) ("An otherwise qualified person is one who is able to meet all of a program [or job's] requirements in spite of his handicap."). Thus, to advance to trial, the section 504 plaintiff must make, inter alia, an initial showing that she is qualified and capable of performing the job at issue. See, e.g., Taub, 957 F.2d at 10 (citing Pushkin v. Regents of Univ. of Colorado, 658 F.2d 1372, 1385 (10th Cir. 1981)); Boldini v. Postmaster General, 1995 U.S. Dist. LEXIS 6651 * 11-13 (D.N.H. May 11, 1995) (citing Mazzarella v. U.S. Postal Serv., 849 F. Supp. 89, 94 (D. Mass. 1994)).

## II. Judicial Estoppel

Judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position

8

it has already asserted in another." Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987); Lockheed Sanders, Inc. v. United States, 862 F. Supp. 677, 684 (D.N.H. 1994). It is designed to protect the integrity of the judicial process. United States v. Levasseur, 846 F.2d 786, 792 (1st Cir.), cert. denied, 488 U.S. 894 (1988); see Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1427-28 (7th Cir. 1993) ("The objective of the doctrine . . . is to prevent situations from arising in which one of two related decisions has to be wrong because a party took opposite positions and won both times."). Under the majority view of this doctrine, "`a party [who] assumes a certain position in a legal proceeding, and succeeds in maintaining that position . . . may not thereafter, simply because his interests have changed, assume a contrary position.'" Wang Lab., Inc. v. Applied Computer Sciences, Inc., 958 F.2d 355, 358 (Fed. Cir. 1992) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)); Milgard Tempering, Inc. v. Selas Corp., 902 F.2d 703, 716 (9th Cir. 1990).

Administrative and quasi-judicial proceedings, such as those conducted by the SSA, are considered prior legal proceedings under the doctrine of judicial estoppel. UNUM Corp. v. United States, 1995 U.S. Dist. LEXIS 6371 * 24 (D. Me. 1995); see Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Auth., 731 F.

9

Supp. 747, 750 (E.D. La. 1990) ("The doctrine applies equally to positions taken in quasi-judicial administrative proceedings as it does in courts of law"); Brown v. Amtrak, 1990 U.S. Dist. LEXIS 10535 * 14 (N.D. Ill. 1990) ("application for disability benefits amounted to the first step in an administrative proceeding which was quasi-judicial in nature"); Muellner v. Mars, Inc., 714 F. Supp. 351, 358 (N.D. Ill. 1989) (application process for social security benefits constitutes prior legal proceeding for purposes of judicial estoppel).

The First Circuit has employed a more liberal approach to judicial estoppel to curtail a litigant from "`playing fast and loose with the courts,'" and from using "`intentional self-contradiction . . . as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" Patriot Cinemas, 834 F.2d at 212. (quoting Scarano v. Central R. Co., 203 F.2d 510, 513 (3d Cir. 1953)); Lockheed Sanders, 862 F. Supp at 684; see also Milgard Tempering, 902 F.2d at 716-17 (observing First Circuit adopted minority view of doctrine).  The party asserting judicial estoppel need not prove prejudice or harm by the inconsistent position.  Patriot Cinemas, 834 F.2d at 214.

The "classic" case where courts have utilized judicial estoppel occurs where "a litigant asserts inconsistent statements of fact or adopts inconsistent positions on combined questions of fact and law." Lockheed Sanders, 862 F. Supp. at 684 (quoting Patriot Cinemas, 834 F.2d at 214).

10

## III. Permanently Disabled Workers Are Not Otherwise Qualified

Federal courts have ruled, in a variety of contexts, that a permanently disabled individual may not sue an employer for employment discrimination under a statute, such as section 504, which requires a prima facie showing that the plaintiff is otherwise qualified or capable to perform the job in question. E.g., Kennedy v. Applause, Inc., 1994 WL 740765 *3 (C.D. Cal. 1994) (citing cases); Muellner, 714 F. Supp. at 359-360.[3] For example, in Brown v. Amtrak, the plaintiff applied for and ultimately received benefits from the SSA, and later from the Railroad Retirement Board ("RRB"), based on representations by the plaintiff that he was disabled and unable to perform his prior job. 1990 U.S. Dist LEXIS * 6-8. The plaintiff subsequently sued his former employer under, inter alia, the Age Discrimination in Employment Act ("ADEA") and the Civil Rights Act of 1964 ("Title VII"), two employment discrimination statutes which, like section 504, require a plaintiff to demonstrate that he was otherwise qualified for the job. Id. at * 19-20. The district court judicially estopped the plaintiff "from seeking

---

[3]The Muellner court observed that

> [a]mong the cases most influential in the development
> of the doctrine of judicial estoppel are those
> involving the very situation confronting the court: an
> individual claims disability, through either judicial
> or quasi-judicial proceedings obtains a single payment
> or continuing disability benefits, and then seeks
> reinstatement to his job.

714 F. Supp. at 355.

11

any relief premised on his ability to work," id. at * 11-12,
because the plaintiff's

> representations to the SSA and the RRB, coupled with
> his continued acceptance of disability benefits from
> both agencies, are irreconcilable with his position
> before this court.  To allow [the plaintiff] to assert
> that he was and is able to perform the duties of his
> employment with [the defendant] at the same time that
> he is collecting disability benefits -- awarded as a
> result of his representations that he could no longer
> work at his job or any other -- would countenance a
> fraud, either on this court or on the two federal
> agencies that awarded him those benefits.

Id. at * 19-20; see Muellner, 714 F. Supp. at 359-60 (same
holding on similar facts).

Likewise, courts in this and other circuits have barred
disabled litigants from maintaining claims requiring an otherwise
qualified showing on essentially the same grounds but without
explicitly invoking the doctrine of judicial estoppel.  In August
v. Offices Unlimited, a case filed under the Massachusetts
counterpart to section 504, Mass. Gen. L. ch. 151B, § 4(16), the
First Circuit affirmed the district court's entry of summary
judgment against a plaintiff who received insurance benefits
after he repeatedly represented himself to insurance companies as
totally disabled.  981 F.2d 576, 581 (1st Cir. 1992).  The court
reasoned that, absent evidence to the contrary, the prior sworn
statements indicate that "no reasonable fact finder could
conclude that, at relevant times, [that the plaintiff] was a
qualified handicapped person within the meaning of the [act]."
Id. at 582.  Drawing direct analogy to the Rehabilitation Act,
the court noted that

12

> [s]ection 504 was designed to prohibit discrimination within the ambit of an employment relationship in which the employee is potentially able to do the job in question. Though it may seem undesirable to discriminate against a handicapped employee who is no longer able to do his or her job, this sort of discrimination is simply not within the protection of section 504.

Id. at 582-83 (quoting Beauford v. Father Flanagan's Boys' Home, 831 F.2d 768, 771 (8th Cir. 1987), cert. denied, 485 U.S. 938 (1988)); see Kennedy, 1994 WL 740765 * 3-4 ("disabled individuals who certify in a claim for disability benefits that they are totally disabled from work are estopped from claiming that they can perform the essential functions of their job").

## VI. The Section 504 Claim Does Not Survive Summary Judgment

There is no dispute that the plaintiff successfully applied for and continues to collect total permanent disability benefits from the SSA. To receive these benefits, the plaintiff made a number of representations, first to the SSA and, more recently, in response to the defendant's interrogatories, concerning the disabling nature of her condition and her resultant inability to work. Indeed, at one point the plaintiff stated in writing that she "became unable to work because of my disabling condition on May 09, 1991" -- the very day she was terminated by the defendant. Given the unequivocal nature of the defendant's documentary evidence and the plaintiff's conspicuous failure to submit evidence to the contrary, the court finds there is no factual dispute that at all relevant times the plaintiff has been

13

and continues to be incapable of performing the essential functions of her past position as a homemaker.

### A.  The Plaintiff Cannot Satisfy an Element of Her Claim

The plaintiff's inability to work creates an insurmountable barrier to recovery under section 504, a statute which requires an initial showing that the plaintiff is qualified and capable of performing the job at issue.  The claim resembles that dismissed under Rule 56 in August to the extent that "no reasonable fact finder could conclude that [the plaintiff] . . . was a qualified handicapped person within the meaning of the [act]."  981 F.2d at 582.

Notwithstanding the apparent inability to satisfy a necessary element of her claim, the plaintiff urges that a total disability does not bar a section 504 action where the disability was caused or exacerbated by the defendant:

> That in order for handicap persons to be protected, the court must adopt the rationale of Saverese [sic] since it would be in the employer's interest to engage in conduct that results in the employee's inability to work so as to avoid damage claims in discrimination lawsuits.  Such a result would sap the vitality of the Rehabilitation Act.

Plaintiff's Response to Defendant's Supplement to Motion for Summary Judgment at ¶ 3 (citing Savarese v. Agriss, 883 F.2d 1194, 1206 n. 19 (3rd Cir. 1989)).  The argument has appeal but fails nonetheless.  First, the plaintiff has not adduced evidence, medical or otherwise, beyond bald assertions to indicate a causal link between the defendant's conduct and her

14

inability to work.  See Plaintiff's Response to Defendant's

Supplement to Motion for Summary Judgment, Appendix (photocopied

excerpt of SSA form in which plaintiff states that "employer

exacerbated my [unintelligible] wrongfully fired").  In fact, the

plaintiff's recent written responses to interrogatories, supra,

indicate that she was injured by prior sexual victimization

and/or an automobile accident.

> Second,

> even if [the plaintiff] could prove that [the
> defendant's conduct] caused h[er] further psychic
> injury . . ., this would not establish a cause of
> action for discriminatory discharge on account of
> handicap in violation of Mass. Gen. L. ch. 151B.  See
> Langon v. Department of Health & Human Servs., 959 F.2d
> 1053, 1061-62 (D.C. Cir. 1992) (establishing a causal
> connection between employer's failure to accommodate
> and plaintiff's poor job performance may support a
> claim for damages for harm caused, but does not
> establish a violation of the Rehabilitation Act). . . .
> [the plaintiff's] status as a "qualified handicapped
> person" does not depend on the cause of his disability,
> but rather on the extent of his disability.  The
> critical question is whether, in fact, [s]he was able
> to perform the essential functions of h[er] job with or
> without reasonable accommodation when [s]he was fired.

August, 981 F. 2d at 583 (emphasis in original); see Beauford,

831 F.2d at 768-71 ("Though it may seem undesirable," disabled

plaintiff could not proceed under section 504 even where

disability resulted from defendant's conduct).  The plaintiff

correctly observes that adherence to the requirement that a

plaintiff be otherwise qualified actually may benefit a

discriminatory employer in those circumstances where the

plaintiff's disability resulted from the employer's wrongful

conduct.  Although such an outcome may appear antagonistic to the

15

policy of safeguarding employee civil rights, the potential for an incongruous result does not dispose of the statutory requirement that a section 504 plaintiff be capable or potentially capable of working in order to state her claim.

Third, the cited authority does not support adequately the plaintiff's argument. In Savarese, the Third Circuit, in reviewing the district court's award of damages under 42 U.S.C. § 1983, observed in a footnote that "[i] would indeed be ironic if the plaintiffs were denied back pay because they were unable to work when the defendants' actions caused the disability." 883 F.2d at n.19. The remark, when viewed in context of the entire footnote, has no relevance to the issues before the court because it addresses those situations where the defendant's wrongful conduct would prevent a section 1983 plaintiff from being placed in the position he would have occupied but for the civil rights violation. See id. In contrast, the instant case is advanced under the Rehabilitation Act, a statutory scheme distinct in purpose, function and available remedies from section 1983. Accordingly, the Savarese footnote, announced by a court sitting in a different circuit in the context of a different statute, does not guide the court's consideration of the instant motion.

The plaintiff, unable to make the necessary initial showing that she is otherwise qualified for the homemaker position, cannot maintain a claim under the Rehabilitation Act as a matter of law.

16

<u>B.    In the Alternative, the Plaintiff is Estopped From</u>
<u>Alleging Facts Necessary to Establish an Element of Her</u>
<u>Claim</u>

Principles of judicial estoppel provide an alternative basis for the dismissal of the Rehabilitation Act claim.  The plaintiff has made multiple factual representations to the SSA concerning her disabling condition and inability to work.  The plaintiff attested to the veracity of each representation, knowing they would be relied upon in the context of a government benefits application process, a quasi-judicial administrative proceeding.  Finding that the plaintiff is "totally disabled" and "unable to work", the SSA approved the application and to date she has collected over five years worth of government benefits.

The plaintiff, who continues to receive funds from the SSA, now seeks to recover under a civil rights statute which, by its express language, requires a showing that she is otherwise qualified to perform her former job as a homemaker.  The very filing of the instant lawsuit under the Rehabilitation Act is "totally inconsistent with the position she took before the SSA." <u>Muellner</u>, 714 F. Supp. at 358.  The integrity of the judicial system is jeopardized when litigants are permitted to assume contrary factual, not legal, positions for the purpose of achieving advantageous results.  The plaintiff, having already reaped the benefits of her past representations of total disability, may not now advance before this court any claim necessarily based on a contrary factual representation.  The court finds the plaintiff is judicially estopped from asserting

17

facts in support of the otherwise qualified element of her section 504 claim and, as a result, the claim may not proceed to trial.[4]

## Conclusion

For the foregoing reasons, the court finds that the defendant is entitled to judgment as a matter of law on the plaintiff's claim under the Rehabilitation Act.  The motion for summary judgment (document no. 23) is granted.  This order resolves the dispute pending between the parties and the clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

June 30, 1995
cc:  William E. Aivalikles, Esquire
     Martha V. Gordon, Esquire

_____

[4]The plaintiff also asserts that the collateral source doctrine permits her to recover damages from both the SSA and the defendant.  According to the Restatement:

> **Effect of Payment Made to Injured Party**
> (2)  Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

Restatement (Second) of Torts, § 920A (1977).  The argument fails.  The plaintiff's section 504 claim is dismissed because she cannot satisfy the otherwise qualified element of her claim given the undisputed fact that she is totally disabled and unable to work.  In the alternative, the claim is dismissed because she is judicially estopped from alleging that she is otherwise qualified given her contrary representations to the SSA.  Under either rationale, the court's ruling is based on the viability of her claim as a threshold matter and not whether the receipt of disability benefits precludes or offsets whatever damages the plaintiff could receive from the defendant should she prevail.

18