**Clyde N. GRIFFITH, Plaintiff**

v.

**WAL–MART STORES, INC., Defendant.**

Civil Action No. 94–117.

United States District Court, E.D. Kentucky.

June 10, 1996.

Margo L. Grubbs, Hoffman, Hoffman & Grubbs, Elsmere, KY and Lee Hornberger, Cincinnati, OH, for Plaintiff.

Douglas L. McSwain and Katherine M. Coleman, Sturgill, Turner & Truitt, Lexington, KY, for Defendant.

## OPINION AND ORDER

BERTELSMAN, Chief Judge.

This is an employment discrimination action alleging violations of the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12102 *et seq.*, the Kentucky Equal Opportunities Act ("KEOA"), KRS 207.130 *et seq.*, and the common law of Kentucky. For the reasons set forth below, Wal–Mart's motion for summary judgment is granted on Griffith's ADA claim.

### FACTUAL BACKGROUND

Clyde N. Griffith ("Griffith") worked for Wal–Mart Stores, Inc. ("Wal–Mart") at its Florence, Kentucky location from October 3, 1990 until October 26, 1992. On his Wal–Mart employment application, Griffith indicated that he injured his back in 1984 and underwent surgery for the resulting problems in 1985 and 1986. Griffith was initially assigned to the sporting goods department at Wal–Mart, where he worked for three to four months. He was subsequently transferred to the store's hardware department, where he worked for over a year and a half. At the time of his dismissal, Griffith had been transferred back to sporting goods.

Griffith's termination arose out of a series of events following a vacation in October 1992, during which he experienced automobile problems. Griffith was scheduled to return to work on Monday, October 19, 1992, but he telephoned the store that day to tell them of his car trouble. Griffith's Assistant Manager, Richard Ostendorf ("Ostendorf") was off that day, so Griffith spoke with another Assistant Manager, Steve Kissabeth ("Kissabeth"). Griffith was absent from work over the next several days, during which time he continued to speak with Ostendorf and Kissabeth about his transportation problems. The parties disagree as to whether Ostendorf or Kissabeth excused Griffith from work during this week and, if so, for which days.

Griffith returned to the store on Saturday, October 24, 1992 to pick up his pay check and speak with Ostendorf. Again, the parties disagree as to what was discussed at that time and whether Griffith was supposed to work that day. Griffith worked briefly on Sunday, but was told to leave and return the following day to speak with Store Manager, Larry Greer ("Greer"). On Monday, October 26, 1995, Greer terminated Griffith.

In November 1992, Griffith filed a disability discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in which he alleged that Wal–Mart fired him because of his back problems, and the EEOC ultimately issued a Notice of Right to Sue.

In April 1993, Griffith applied for Disability Insurance Benefits from the Social Security Administration ("SSA"). In his application, Griffith stated:

· I became unable to work because of my disabling condition on October 29, 1992. I am still disabled.

· I have not been able to work since I was let go by Wal–Mart in [sic] October 29, 1992.[1]

---

1. Wal–Mart actually terminated Griffith on October 26, 1992. The difference in dates appears to be an error on Griffith's part and, as noted *infra,* does not affect the outcome of the pending motion.

· I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the social security act commits a crime punishable under federal law by fine, imprisonment or both. I affirm that all information I have given in connection with this claim is true.

*Id.*

In an accompanying Disability Report, Griffith indicated that his disabling condition first bothered him on November 21, 1991, when he reinjured his back while working at Wal–Mart, and that the condition finally made him stop working as of October 29, 1992. In the "Activities of Daily Living" questionnaire completed by Griffith on August 26, 1993, Griffith described the limitations caused by his back problem, including that:

· he could only stand for about 10 minutes at a time;

· he has needed help getting out of the bath and off the couch since 1985;

· he has been unable to do any odd jobs around the house since 1985;

· he could not do any household chores except folding clothes;

· he has been unable to do the grocery shopping since 1985.

In a further statement to the SSA on November 5, 1993, Griffith stated: "My back pain keeps me from doing any activities. It is very hard to take care of myself."

Griffith was initially denied SSA benefits, but after he pursued his claim and filed a request for a hearing, an ALJ determined on July 22, 1994 that Griffith met the SSA's definition of a disabled individual and qualified for benefits retroactive to October 29, 1992. The ALJ's decision includes the following discussion:

The claimant has had a severe back impairment since 1984. He has undergone back surgery in 1985 and 1986, and a neurectomy in 1991. Thereafter, he returned to full-time work as a retail clerk

until October 29, 1992. His work ended at that time due to exacerbation of his back pain and depression.[2] . . .

The limitations placed on the claimant by [his doctors] restrict him to significantly less than a full range of sedentary work. . . .

The claimant worked in the past as an auto body repairman, maintenance person, retail salesclerk, and reserve police officer. All of his past relevant jobs required an ability to perform at least light exertion on a sustained basis. *Because of his limitation to significantly less than a full range of sedentary work, he has been unable to engage in past relevant work since October 29, 1992. . . .*

*Essentially, his residual functional capacity precludes all work activity on a full-time basis.* Considering the claimant's age, education, previous work experience, and residual functional capacity, . . . [the SSA regulation] establishes that the claimant is disabled. . . .

*The claimant has been disabled, as defined by the Social Security Act, since October 29, 1992.*

(emphasis added).

On July 5, 1994, Griffith initiated suit in this court. On March 5, 1996, this court held a final pretrial conference and heard argument on defendant's original motion for summary judgment. The court denied defendant's motion for summary judgment; however, in view of the above information concerning Griffith's application for Social Security disability benefits—not available to Wal–Mart when its original motion for summary judgment was filed—the court continued the trial date and ordered the parties to file briefs addressing the possible preclusive effect of the Social Security proceedings on Griffith's ADA claim. Those briefs are now before the court.

Finding that Griffith's representations in his applications for social security disability benefits preclude him from satisfying the elements of a prima facie ADA claim, this

---

**2.** Apparently, the ALJ was not aware that Griffith had actually been terminated by Wal–Mart.

The depression to which the ALJ refers began in September 1988 when Griffith's mother died.

court now grants Wal–Mart's renewed motion for summary judgment.

## ANALYSIS

### The Americans With Disabilities Act ("ADA")

#### 1. Griffith Must Establish That He Was Otherwise Qualified to Perform the Essential Functions of His Job.

Title I of the ADA, governing actions for employment discrimination against the disabled, prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, ... hiring, advancement, or discharge ..., compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A "qualified individual with a disability," is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The term "essential functions" means the fundamental job duties of the employment position. 29 C.F.R. § 1630.2(n)(1) (1995).

In addition, the plaintiff must establish that he was qualified at the time of the job action in question. *Parker v. Metropolitan Life Ins. Co.*, 875 F.Supp. 1321, 1326 n. 5 (W.D.Tenn.1995) (citation omitted). It is irrelevant whether the plaintiff could perform the essential functions at some later date. *Cheatwood v. Roanoke Indus.*, 891 F.Supp. 1528, 1537 (N.D.Ala.1995).

#### 2. This Court Adopts the View that a Plaintiff's Representations in Applications for Long–Term Disability Benefits May Have a Preclusive Effect on His ADA Claim.

The majority of federal courts faced with the issue have ruled that an ADA plaintiff who has represented that he or she is disabled in order to obtain benefits under Long–Term Disability ("LTD") insurance, social security, or workers' compensation is not a "qualified individual" under the ADA as a matter of law. These courts reason that when an individual represents under oath in benefits applications that he or she was unable to perform the duties of his or her former job[3], the individual should be precluded from arguing in an ADA suit that he or she *was* capable of performing the essential functions of that job for the same period of time. As the court in *Reigel v. Kaiser Foundation Health Plan of N.C.*, 859 F.Supp. 963 (E.D.N.C.1994), stated, in these circumstances, a plaintiff "cannot speak out of both sides of [his] mouth with equal vigor and credibility before this court." *Id.* at 970.

Similarly, the district court in *Simo v. Home Health & Hospice Care*, 906 F.Supp. 714 (D.N.H.1995), explained at length its rationale for barring a Rehabilitation Act plaintiff's claim:

> The plaintiff has made multiple factual representations to the SSA concerning her disabling condition and inability to work. The plaintiff attested to the veracity of each representation, knowing they would be relied upon in the context of a government benefits application process, a quasi-judicial administrative proceeding. Finding that plaintiff is "totally disabled" and "unable to work", the SSA approved the application and to date she has collected over five years worth of government benefits.
>
> The plaintiff, who continues to receive funds from the SSA, now seeks to recover under a civil rights statute which, by its express language, requires a showing that she is otherwise qualified to perform her former job as a homemaker. The very filing of the instant lawsuit ... is totally inconsistent with the position she took before the SSA.... The integrity of the judicial system is jeopardized when litigants are permitted to assume contrary

---

**3.** A person is disabled under social security law if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience engage in any other kind of substantial gainful work which exists in the immediate area in which he lives, or whether a specific vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

factual, not legal, positions for the purpose of achieving advantageous results. *The plaintiff, having already reaped the benefits of her past representations of total disability, may not now advance before this court any claim necessarily based on a contrary factual representation.*

*Id.* at 721 (internal quotations omitted) (emphasis added).

The treatment of such representations in ADA cases varies. Some courts invoke principles of strict judicial estoppel or treat the plaintiff's representations as binding admissions. *See, e.g. August v. Offices Unlimited, Inc.,* 981 F.2d 576, 581–84 (1st Cir.1992) (plaintiff's statements to disability insurers were binding admissions that he could not perform the essential duties of his job, thus he was not a "qualified handicapped person" under Massachusetts disability law[4]); *Simo v. Home Health & Hospice Care,* 906 F.Supp. 714 (D.N.H.1995) (invoking judicial estoppel doctrine to hold that plaintiff is barred from alleging facts necessary to make "otherwise qualified" showing on account of positions she took before SSA in disability proceeding); *Garcia–Paz v. Swift Textiles, Inc.,* 873

F.Supp. 547, 555 n. 4 (D.Kan.1995) (plaintiff with multiple sclerosis who on benefits applications affirmed that she was disabled from her former work was "estopped from claiming otherwise" in ADA suit).[5]

Indeed, this court indicated in *Hankins v. The Gap,* Civil Action No. 93–172, 1995 WL 867882 (E.D.Ky.1995), *aff'd,* 84 F.3d 797 (6th Cir.1996), that a plaintiff determined to be permanently and totally disabled for the purpose of receiving social security disability benefits would be unable to recover under the ADA for the time period during which she claimed to be disabled. *See id.* slip op. at ——— ("Plaintiff's current status as permanently and totally disabled, however, does not preclude plaintiff from seeking redress for disability based discrimination between . . . the effective date of the ADA . . . *and [the date] she was medically determined to be permanently disabled.*") (emphasis added).[6]

Other courts, however, consider prior representations of disability as only one factor to be weighed in determining whether the plaintiff is "otherwise qualified." *See, e.g. Pegues*

---

**4.** The Massachusetts statute at issue in *August* defined a "qualified handicapped individual" in language nearly identical to the ADA.

**5.** *See also Beauford v. Father Flanagan's Boys' Home,* 831 F.2d 768, 770–71 (8th Cir.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988); *Cline v. Western Horseman, Inc.,* 922 F.Supp. 442, 447 (D.Colo.1996); *Reiff v. Interim Personnel, Inc.,* 906 F.Supp. 1280, 1290–91 (D.Minn.1995); *Smith v. Midland Brake, Inc.,* 911 F.Supp. 1351 (D.Kan.1995); *Nguyen v. IBP, Inc.,* 905 F.Supp. 1471 (D.Kan.1995); *Cheatwood v. Roanoke Indus.,* 891 F.Supp. 1528, 1537–38 (N.D.Ala.1995); *McNemar v. The Disney Stores, Inc.,* No. 94-6997, 1995 WL 390051, at *3–4 (E.D.Pa. June 30, 1995); *Harden v. Delta Air Lines, Inc.,* 900 F.Supp. 493, 496–97 (S.D.Ga. 1995); *Berry v. Norfolk Southern Corp.,* No. 94–0075–R, 1995 WL 465819 (W.D.Va. June 23, 1995); *Kennedy v. Applause, Inc.,* No. 94–5344 SVW, 1994 WL 740765, at *3–*6 (C.D.Cal. Dec. 6, 1994). *Cf. Fussell v. Georgia Ports Authority,* 906 F.Supp. 1561, 1575–76 (S.D.Ga.1995) (agreeing with cases adopting strict estoppel theory and stating that the court is inclined to grant summary judgment to defendant on plaintiff's ADA claim, but allowing more discovery because record lacked direct evidence of substance of plaintiff's representations to SSA).

**6.** A similar approach has also been applied in actions involving other types of claims, where

courts find that a plaintiff is estopped by prior representations of total disability from seeking any relief premised on his or her ability to work. *See, e.g., Brown v. National Railroad Passenger Corp.,* No. 86C10284, 1990 WL 119558 (N.D.Ill. 1990 Aug. 14, 1990) (holding that Title VII/ADEA plaintiff who represented to SSA and to Railroad Retirement Board that he could no longer work at his job is judicially estopped from seeking reinstatement and back pay).

The *Brown* court's reasoning is equally applicable in the ADA context:

Brown's representations to the SSA and the RRB, coupled with his continued acceptance of disability benefits from both agencies, are irreconcilable with his position before this court. To allow Brown to assert that he was and is able to perform the duties of his employment with Amtrak at the same time that he is collecting disability benefits—awarded as a result of his representations that he could no longer work at his job or any other—would countenance a fraud, either on this court or on the two federal agencies that awarded him those benefits. Brown simply cannot play "fast and loose with the courts" or with administrative agencies acting in quasi-judicial capacities. This case falls squarely within the doctrine of judicial estoppel.

*Id.* at *6.

*v. Emerson Electric Co.*, 913 F.Supp. 976, 980–81 (N.D.Miss.1996) (holding that although a finding of disability for workers' compensation or social security purposes does not necessarily foreclose an ADA claim, the advancement of plaintiff's clearly inconsistent positions "is not legally proper").[7] Nevertheless, in all but one of the cited cases the evidence of the plaintiffs' statements was so persuasive that the courts granted defendants' motions for summary judgment.[8]

The cases that do not appear to give any preclusive effect to the receipt of disability benefits in a subsequent disability discrimination suit are factually distinguishable from the majority approach and from the case at bar. In *Overton v. Reilly*, 977 F.2d 1190 (7th Cir.1992), for instance, the plaintiff suffered from an emotional illness and was found eligible for social security disability benefits even before he was hired by the defendant, the EPA. When the EPA terminated the plaintiff, he sued, alleging that the EPA fired him on account of his disability. In reversing the grant of summary judgment to the EPA, the Seventh Circuit rejected the district court's reliance on the finding of the SSA that the plaintiff was entitled to disability benefits:

> Further, even if a finding of disability could have preclusive effect in a private lawsuit, such a finding is consistent with a claim that the disabled person is "qualified" to do his job under the Rehabilitation Act. *First, the SSA may award disability benefits on a finding that the claimant meets the criteria for a listed disability, without inquiring into his ability to find work within the economy* . . . . *As it turns out, the SSA granted benefits to [the plaintiff] on this basis.* Second, even if the SSA had looked into Overton's ability to find work in the national economy, its in-

quiry would necessarily be generalized. The SSA may determine that a claimant is unlikely to find a job, but that does not mean that there is no work the claimant can do. In sum, the determination of disability may be relevant evidence of [the plaintiff's] handicap, but it can hardly be construed as a judgment that [the plaintiff] could not do his job at the EPA.

*Id.* at 1196 (emphasis added).

Thus, the *Overton* court's refusal to give preclusive effect to the plaintiff's receipt of social security benefits was based on its recognition that the criteria employed by the SSA in that particular case—the plaintiff's automatic qualification for benefits based on the nature of his disability and the resulting limited inquiry into his employability—were not dispositive, particularly in the face of evidence that the plaintiff had performed many of his job duties at the EPA satisfactorily. *Id.*

Importantly, *Overton* did *not* involve representations by the plaintiff that he was disabled and unable to perform his job. The case is thus distinguishable from those where the estoppel or admission theory precludes an ADA plaintiff from taking a position absolutely at odds with prior (sometimes even simultaneous) representations to government agencies or insurance carriers. *See Smith v. Midland Brake, Inc.*, 911 F.Supp. 1351, 1359 (D.Kan.1995) ("The case law is clear that it is the plaintiff's inconsistent representations which have preclusive effect."); *Reiff v. Interim Personnel, Inc.*, 906 F.Supp. 1280, 1290–91 (D.Minn.1995) (distinguishing *Overton* from facts before it where plaintiff "by his own statements and through his authorized physician" represented that he could not perform the duties of his job); *Kennedy v. Applause, Inc.*, No. 94–5344 SVW, 1994 WL 740765, at *6 n. 6 (C.D.Cal. Dec. 6, 1994)

---

7. *See also Morton v. GTE North Inc.*, 922 F.Supp. 1169, 1177–79 (N.D.Tex.1996); *Dockery v. North Shore Medical Center*, 909 F.Supp. 1550, 1559 (S.D.Fla.1995); *Anzalone v. Allstate Insurance Co.*, No. 93–2248, 1995 WL 35613 (E.D.La. Jan. 30, 1995); *Reigel v. Kaiser Foundation Health Plan of N.C.*, 859 F.Supp. 963 (E.D.N.C.1994).

8. In *Anzalone, supra,* the court denied the employer's motion for summary judgment on the grounds that the plaintiff, an insurance claims

adjuster, had "not unambiguously characterized himself as totally and completely disabled." *Id.* at *1. Specifically, the court relied on the fact that plaintiff and his doctor had consistently taken the position that the plaintiff could work with certain restrictions (such as working from home) and that he had "presented sufficient evidence of his ability to perform the essential functions of an insurance claims adjuster to withstand summary judgment as a matter of law." *Id.* at *2.

("The cases relied upon by the Court place more emphasis on the statements made by a plaintiff for the purposes of obtaining disability benefits as opposed to the decisions of the relevant agencies regarding provision of benefits.").

Other cases relied on by Griffith declining to give preclusive effect to the receipt of disability benefits are similarly distinguishable. In *Smith v. Dovenmuehle Mortgage, Inc.*, 859 F.Supp. 1138 (N.D.Ill.1994), the court denied defendant's motion for summary judgment, finding that judicial estoppel did not apply because an issue of fact existed as to whether or not the position taken by the plaintiff in front of the SSA was inconsistent with his position in his ADA suit. Important to this outcome, however, was the fact that both the plaintiff and his doctor argued that he had since recovered from his disability; thus, the court found that "plaintiff has offered a plausible explanation for the divergence between his representation to the SSA and the arguments he is making now." *Id.* at 1142.[9]

Similarly, in *Kupferschmidt v. Runyon*, 827 F.Supp. 570 (E.D.Wisc.1993), the court simply held that the receipt of social security disability benefits, *per se*, did not preclude the plaintiff from proving that she could perform the essential function of her job. *Id.* at 574 [10]. Lastly, in *Lawrence v. United States I.C.C.*, 629 F.Supp. 819 (E.D.Pa.1985), the court found no contradiction between the plaintiff's representations to the SSA and his ADA claim because the former consisted only of his assertion that he could not perform *all* the functions of his prior job, not that his

disability prevented him from working at all. *Id.* at 822.

**3. Griffith's Representations of Disability Preclude Him From Asserting That He Was Otherwise Qualified to Perform the Essential Functions of His Position at Wal–Mart.**

█ As described earlier in this opinion, the ALJ's decision awarding Griffith social security disability benefits reflects extensive reliance on Griffith's own representations of the limitations caused by his back condition. There is, however, an irreconcilable inconsistency between those representations and Griffith's current claim that at the time Wal–Mart terminated him, he was "otherwise qualified" to perform the essential functions of his job.[11] The physical demands of the Wal–Mart Sales Associate position, described in a Wal–Mart employee booklet, include:

· The Associate is regularly required to walk or stand.

· The Associate must frequently lift and/or move objects weighing at least 25 and up to 50 pounds (lbs.).

· The Associate will occasionally be required to bend, twist or squat.

· The Associate will be required to reach above shoulder height and below waist level.

The inconsistencies between these job requirements and Griffith's representations about his disability preclude Griffith from raising an issue of fact as to whether, on the date he was terminated by Wal–Mart, he was a qualified individual under the ADA. *See*

9. The *Smith* court's focus on whether the plaintiff was qualified to perform his job at the time of the suit appears erroneous because the clear language of the ADA makes the relevant inquiry whether or not the plaintiff was "otherwise qualified" at the time of the employment action in question, not at some later date. *See Parker v. Metropolitan Life Ins. Co.*, 875 F.Supp. 1321, 1326 n. 5 (W.D.Tenn.1995).

10. The *Kupferschmidt* court noted that the record did not include evidence of the essential functions of the plaintiff's job or the administrative record from her social security case. Thus, the court had no way to compare any representations made by the plaintiff with the actual re-

quirements of the job for which she argued that she was otherwise qualified.

11. Although Griffith stated in his SSA application that he was "let go" by Wal–Mart on October 29, 1992, he was actually terminated on October 26, 1992. This discrepancy appears to be a mistake. Nevertheless, even if Griffith were to argue that the SSA only found him to be disabled as of the 29th rather than the 26th, the difference would be immaterial for the purposes of this suit because Griffith offers no evidence "that remotely suggests anything happened [between the two dates] which would explain why [he] was disabled as of the later date but not the earlier date." *Nguyen v. IBP. Inc.*, 905 F.Supp. 1471, 1485 n. 7 (D.Kan.1995).

*Kennedy v. Applause, Inc.,* No. 94–5344 SVW, 1994 WL 740765, at *5–*6 (C.D.Cal. Dec. 6, 1994) (describing plaintiff's responses on SSA "Daily Activities Questionnaire" and concluding that they were incompatible with ADA claim). Moreover, the fact that Griffith himself never used the phrase "totally disabled" is immaterial. *See Brown v. National Railroad Passenger Corp.,* No. 86C10284, at *6, 1990 WL 119558 (N.D.Ill.1990) ("In the Disability Report [the plaintiff] represented that she had disabling conditions, that the conditions stopped her from working. That she never used the term 'totally disabled' is of no consequence. Total disability is a necessary inference from the numerous ailments and consequences she recites.").

Because he is precluded from proving that he was "otherwise qualified" to perform the essential functions of his position at Wal–Mart, Griffith cannot make out a prima facie case under the ADA. Wal–Mart is thus entitled to summary judgment on this claim.

## CONCLUSION

Therefore, the court being advised, it is **ORDERED** as follows:

(1) Defendant's renewed motion for summary judgment on plaintiff's ADA claim (doc. #87) be, and it is hereby, **GRANTED.** Plaintiff's ADA claim is dismissed with prejudice.

(2) Plaintiff's motion for partial summary judgment and adjudication of noncontroverted facts (doc. #91) be, and it is hereby, **DENIED.**

(3) The court declines to exercise its discretion under 28 U.S.C. § 1367 to assert supplemental jurisdiction over plaintiff's state law claims raised under the Kentucky Equal Opportunities Act, KRS 207.130 *et seq.,* and the common law of Kentucky. These claims, therefore, are dismissed without prejudice.

(4) Defendant's motion to dismiss plaintiff's state law claims (doc. #92) is **DENIED AS MOOT.**