97 F.3d 1460
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Daniel S. PATTERSON, Plaintiff-Appellant,
v.
CITY OF SEATTLE, a municipal corporation, Robert P.
Gronczack, Teresita Batayola, Donna Kimbrough-Johnson,
Rodney Oliver, John Okamoto, Norman B. Rice, and Robert
Watt, each in their individual and official capacities,
Defendants-Appellees.
 No. 95-35487.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 8, 1996.
Decided Sept. 17, 1996.
 
 Before: REAVLEY,* REINHARDT, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Daniel S. Patterson, a former employee of the City of Seattle, sued the City and several of its officials and employees for damages and other relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Washington Law Against Discrimination, RCW 49.60, alleging discrimination and unlawful retaliation. The district court granted summary judgment as to all defendants on all claims, and Patterson appeals that ruling. We affirm the decision of the district court.
 
 
 3
 Patterson was hired by the City of Seattle in 1977. He worked in the Department of Community Development (DCD) as a producer of training videos, documentaries and public service announcements. In 1989, he began complaining of sexual harassment by his supervisor, D'Anne Mount. His complaints related principally to verbal comments that he considered to be lewd, crude, or sexually offensive. Eventually, this complaint culminated in a lawsuit against the City and City officials for sexual harassment and retaliation. Patterson failed to prove his claim of sexual harassment but prevailed on his retaliation claim and recovered approximately $140,000 in damages, costs, and attorneys fees.
 
 
 4
 DCD was abolished for budgetary reasons soon thereafter, and Patterson lost his job. Following his termination, Patterson actively sought to be rehired by the City. He solicited, and received, letters of support from community leaders. In September 1992, Patterson was rehired as a Principal Video Specialist with the Seattle Water Department (SWD), in a position created for him.
 
 
 5
 For the first few months of his employment, Patterson was assigned to a cramped workspace and lacked video equipment with which to produce programs. Subsequently, in December 1992, Patterson filed a complaint with the Equal Employment Opportunity Commission alleging retaliation due to his prior lawsuit. He alleged mistreatment evidenced by his inadequate workspace, lack of video equipment, and lack of assigned projects.
 
 
 6
 In early January 1993, Patterson learned that Mount, his former supervisor and one of the defendants in his prior lawsuit, had been promoted and relocated to the same building in which he now worked, the Dexter Horton Building. Upon discovering this information, Patterson notified his supervisor that he was ill, left work, and never returned.
 
 
 7
 Patterson suffers from Crohn's Disease, an inflammatory bowel disorder that produces a thickening of the intestinal wall, a narrowing of the bowel channel, and a variety of symptoms including abdominal pain and diarrhea. Although the cause is unknown, stress exacerbates the symptoms.
 
 
 8
 In late January 1993, Patterson notified his supervisor for the first time about his Crohn's Disease and requested reasonable accommodations under the ADA. Patterson's request noted his desire for disability status and his need, among other things, for reasonable accommodations to reduce the stress caused by Mount's presence in the Dexter Horton Building.
 
 
 9
 Defendants agreed that Crohn's Disease qualified Mr. Patterson for reasonable accommodations under the ADA. In a February 14, 1993 letter, Patterson requested three specific accommodations: he wanted the City to provide him with an adequate workspace, to purchase necessary video equipment, and to relocate Mount to another building. Over the course of their negotiations, Patterson made a number of other suggestions regarding Mount's presence in the Dexter Horton Building, including moving Patterson himself to another building, letting him work off-hours, and letting him work from home.
 
 
 10
 The City responded to Patterson's accommodation requests regarding work space and equipment, and on appeal Patterson does not argue that the City's response with respect to these requests was inadequate or improper. However, the City refused to agree to any of Patterson's accommodation requests regarding Mount's presence in the Dexter Horton Building, and it is this refusal which Patterson argues violated federal and state law.
 
 
 11
 Patterson refused to return to work, contending that the City had not provided reasonable accommodation. The City delivered warning notices and finally terminated Patterson on June 3, 1993, for unexcused absences.
 
 Reasonable Accommodation
 
 12
 Patterson first argues that by rejecting his requests for accommodation regarding Mount's presence in the Dexter Horton Building the defendants violated federal and state discrimination laws. The ADA provides that "no [employer] shall discriminate against a qualified individual with a disability because of the disability of such individual...." 42 U.S.C. § 12112(a). The ADA defines "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such [employer]." 42 U.S.C. § 12112(b)(5)(A). The Washington Law Against Discrimination imposes the same obligations on employers as those required by the ADA. See Dean v. Municipality of Metropolitan Seattle, 104 Wn.2d 627, 632, 708 P.2d 393, 398 (1985).
 
 
 13
 In Buckingham v. U.S., 998 F.2d 735 (9th Cir.1993), we set out the respective burdens of the parties in a failure to accommodate claim under the Rehabilitation Act of 1973:[1]
 
 
 14
 We have interpreted the Act to place the burden on plaintiffs to prove that they are qualified handicapped individuals. The regulations [promulgated under the Rehabilitation Act] define "Qualified Handicapped" individuals as ones who, with or without reasonable accommodation, can perform the essential functions of their job. If accommodation to their handicap is required to enable them to perform essential job functions, then plaintiffs must only provide evidence sufficient to make "at least a facial showing that reasonable accommodation is possible."
 
 
 15
 Id. at 740 (quoting Arneson v. Heckler, 879 F.2d 393, 396 (8th Cir.1989)). Once a plaintiff has made that facial showing, the burden then shifts to the employer to provide reasonable accommodations.
 
 
 16
 Here, however, Patterson failed to make the required facial showing that accommodation was required to enable him to perform his essential job functions. Patterson supported his accommodation request with a letter from Dr. Affolter, his treating physician. After describing Crohn's disease generally and the exacerbating effects of stress, Dr. Affolter's letter outlined Patterson's need for accommodation:
 
 
 17
 Clearly, Crohn's disease is a disability. If it is being exacerbated ... I would hope that the City or those responsible would be able to make some adjustment in your working conditions to make it possible for you to continue to work in a reasonable setting. If you really are in a situation where you need to be continuously exposed to the supervisor with whom you had such a serious disagreement, or if indeed you are somehow being denied either equipment or work, these situations would certainly aggravate your existing medical condition.
 
 
 18
 ER at 52-53 (emphasis added). Patterson failed to make any kind of showing that he was or would be "continuously exposed" to Mount at the Dexter Horton Building. They did not work in the same office or even on the same floor. Mount did not work for the same department Patterson did, and she had no supervisory or other working relationship with Patterson. At most Patterson feared the mere possibility of running into her in the lobby on the way into or out of work. Such a remote possibility does not rise to the level of "continuously exposed" or otherwise raise a cognizable problem regarding accommodation. Accordingly, the City's failure to accommodate Patterson's requests regarding Mount's presence in the Dexter Horton Building does not constitute discrimination under the ADA or Washington Law Against Discrimination.[2]
 
 Retaliation
 
 19
 In addition to his disability discrimination claims, Patterson claims unlawful employment retaliation by the defendants in violation of federal and state law. Both the ADA and Washington Law Against Discrimination in the workplace prohibit an employer from taking adverse employment actions against an employee on the basis of employee conduct protected by those laws.[3] Patterson contends that the defendants in this case took adverse employment actions against him in retaliation for his having previously filed a lawsuit against the city, and for having asserted his right to a reasonable accommodation for his disability.
 
 
 20
 To establish a prima facie case of discriminatory retaliation, a plaintiff must show that: (1) he engaged in an activity protected under the relevant statutes; (2) his employer subjected him to adverse employment action; (3) there was a causal link between the protected activity and the employer's action. Miller v. Fairchild Industries, 797 F.2d 727, 731 (9th Cir.1986); Corville v. Cobarc, 73 Wn.App. 433, 439, 869 P.2d 1103, 1105 (1994). Causation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the alleged retaliation. Miller, 797 F.2d at 731.
 
 
 21
 Once a plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a legitimate, non-retaliatory explanation for the action. Miller, 797 F.2d at 731 (citing Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir.1984)). To satisfy this burden, the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Id. (quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981)).
 
 
 22
 If the defendant satisfies that burden, the plaintiff is then afforded the opportunity to show that the "assigned reason" was a "pretext or discriminatory in application." Washington v. Garrett, 10 F.3d 1421, 1432 (9th Cir.1993) (quoting Diaz v. American Tel. & Tel., 752 F.2d 1356, 1358-59 (9th Cir.1985)). If a plaintiff succeeds in raising a genuine issue regarding "the authenticity of the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be believed." Garrett, 10 F.3d at 1433.
 
 
 23
 Patterson asserts three separate protected activities, and identifies six adverse employment actions sufficiently close in time to show the required causal nexus. He claims that the City unlawfully retaliated against him in response to (1) his initial lawsuit against the City alleging sexual harassment and unlawful retaliation, (2) his EEOC claim in December of 1992 alleging continuing retaliation, and (3) his request for reasonable accommodation under the ADA. The adverse employment actions which he contends establish unlawful retaliation are 1) the City delayed rehiring him, following layoffs in his department when funding for the entire department was canceled, 2) he was provided with inadequate office space when he was rehired, 3) he was given inadequate equipment and work, 4) the City rejected his request for donated sick leave, 5) the City violated its own express ADA policy in dealing with his request for reasonable accommodation and 6) he was terminated solely because he insisted on reasonable accommodation for his disability.
 
 
 24
 The last three alleged adverse employment actions are nothing more than variations on Patterson's failure to accommodate claim, addressed above and consequently without merit. With respect to the remaining claims, the City has responded with legitimate, non-retaliatory explanations, and Patterson has failed to raise a genuine issue of pretext regarding any of these explanations.
 
 
 25
 The City explained that the delay in rehiring Patterson was the result of the specialized nature of his work. The City offered evidence that its placement program simply had more success finding positions for clerical or administrative staff. More to the point, the City argued persuasively that had it harbored unlawful ill-will toward Patterson, it would not have created a special position for him as it did. With respect to the inadequate work space claim, the City offered evidence that Patterson was placed in the only space available near the rest of his department and that, in any event, the entire department moved to a new space soon after Patterson stopped working. The delay in purchasing equipment was the result of an initial unsuccessful attempt to track down Patterson's old DCD equipment, followed by a reasonable delay inherent in ordering and receiving new equipment. Finally, it is undisputed that Patterson's job was a start-up position: in such circumstance, the absence of sufficient work is not suggestive of discrimination.
 
 
 26
 Patterson failed to offer evidence sufficient to raise a genuine issue as to pretext regarding any of the City's explanations. Accordingly, the district court properly granted summary judgment for all defendants on the retaliation claim.
 
 Conclusion
 
 27
 The district court properly granted summary judgment for all defendants on all claims before it. We, therefore, affirm the decision of the district court.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The Honorable Thomas M. Reavley, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Many of the ADA provisions were borrowed from regulations issued by the EEOC in implementation of the Rehabilitation Act of 1973. The terms and case precedent of the Rehabilitation Act are used as persuasive evidence when interpreting the ADA. See Vande Zande v. Wisconsin Department of Administration, 44 F.3d 538, 542 (7th Cir.1995)
 
 
 [2]
 In light of this conclusion, Patterson's related claim that he was terminated because of his disability is also without merit. Patterson argues that he was disabled from working because the defendants failed to provide reasonable accommodation. Because we conclude that Patterson did not make a sufficient showing regarding the need for reasonable accommodation, we further conclude that the City legitimately fired Patterson for "unexcused absences."
 
 
 [3]
 Wash.Rev.Code § 49.60.210 provides in pertinent part:
 (1) It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.
 42 U.S.C. § 12203(a) provides in pertinent part:
 (a) Retaliation
 No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing in this chapter.