**Keith BUCK, Plaintiff**

v.

**FRIES & FRIES, INC., et al. Defendants.**

**Civil Action C–1–94–555.**

United States District Court,
S.D. Ohio,
Western Division.

Dec. 26, 1996.

Donald B. Hordes, of Schwartz, Manes & Ruby, Cincinnati, OH, for plaintiff.

Robin E. Harvey and Shelley A. Baber, of Benesch, Friedlander, Coplan & Aronoff, Cincinnati, OH, for defendants.

## MEMORANDUM AND ORDER

BECKWITH, District Judge.

This matter comes before the Court to consider the Defendant's motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This case arises out of the Plaintiff's claim that the Defendant[1] discriminated against him in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101. The Plaintiff alleges that he was disabled as a result of an accident that occurred in 1991, in which he suffered an injury to the frontal lobes of his brain. The Plaintiff contends that he was wrongfully placed on disability leave in 1993 and wrongfully terminated in 1995, despite his representations that he could continue to perform the essential elements of his job with or without reasonable accommodation. In addition, the Plaintiff alleges that the Defendants retaliated against him for engaging in statutorily protected activity, in violation of the retaliation provisions of the ADA. Finally, the Plaintiff alleges that the Defendants violated parallel provisions of Ohio anti-discrimination laws, and violated the public policy of the state of Ohio.

## Background

The Plaintiff is a Ph.D. chemist and was hired by the Defendant in 1979 to act as a research bench chemist. In that capacity, the Plaintiff's primary duty was to create new chemical synthesis designs and physically implement laboratory experiments to test the new designs. The Plaintiff's job responsibilities required him to conduct lab work which involved volatile materials in a hazardous laboratory environment. Prior to his accident in 1991, the Plaintiff was a highly regarded and productive bench chemist at Tastemaker.

On September 12, 1991, the Plaintiff fell and hit his head on the sidewalk. As a result, he suffered a subdural hematoma, which required emergency surgery. After remaining in the hospital for several weeks, he was released by his neurologist, Dr. James Anthony. Shortly thereafter, he returned to work. At the time of his returning to work, the Plaintiff continued to be afflicted with physical and cognitive problems which resulted from his fall. His immediate supervisor instructed him not to report to the research lab, but instead to do numerous activities outside of the lab. Throughout the next several months, the Plaintiff's physical and cognitive abilities did show improvement, but eventually appeared to plateau.

Upon returning to work, the Plaintiff was initially disinterested and disengaged in his prior work responsibilities. However, as the Plaintiff's condition improved, he repeatedly expressed a desire to return to working in the lab. In response to the Plaintiff's requests, the Defendant began to evaluate the possibility of returning the Plaintiff to his prior responsibilities in the lab.

In their memoranda, the parties have outlined in painstaking detail the occurrences which took place in the two years between the Plaintiff's accident and the Defendant's placing him on disability leave.[2] For the sake of judicial economy, the Court will attempt to summarize what transpired in a concise form.

Throughout the two year period between the Plaintiff's accident and his being placed

1. The Plaintiff brings this suit against Fries & Fries, Inc., and Hercules Flavor, Inc. These entities are engaged in a partnership, and are jointly doing business under the name "Tastemaker." At the time of the Plaintiff's alleged wrongful placement on disability leave and termination, he was an employee of Tastemaker. The Plaintiff asserts that Defendants Fries & Fries, Inc., and Hercules Flavor, Inc., are jointly and severally liable for the actions of Tastemaker. For the sake of simplicity, the Court will refer to the Defendants collectively as "Tastemaker" or "the Defendant."

2. The Court notes that both parties far exceeded the twenty page limit for legal memoranda set forth in Local Rule 7.2(a)(3) for the Southern District of Ohio. In addition, neither party filed for leave to submit memoranda in excess of twenty pages. Because of the parties' failure to exercise discretion in determining which facts and arguments were most relevant to the Defendant's motion, the Court was forced to drudge through pleadings which approached one hundred pages in length. While similarly long memoranda may be appropriate for a case with complex legal issues, the Court questions whether such detail was necessary for this "garden variety" discrimination claim. Admittedly, the Court doubts that the Defendant's motion for summary judgment could have been briefed by the parties within the twenty page limit. However, this fact highlights the litigiousness with which this case was approached by counsel for both parties. While the Court cannot doubt that counsel were thorough, it questions whether the parties paying their legal fees appreciate such attention to minutia.

on disability leave, a number of Tastemaker employees had an opportunity to interact with him. The Defendant has elicited affidavits and deposition testimony from a number of co-workers which strongly suggests that the Defendant's physical and cognitive impairments made him unable to work as a bench chemist. Nonetheless, the Plaintiff's immediate supervisor, Dr. Anthony Dennis, established a five-stage plan which was designed to facilitate the Plaintiff's return to the lab. Indeed, the Plaintiff successfully completed the first several steps, which dealt with demonstrating intellectual abilities. However, Dr. Dennis was not certain that the Plaintiff was ready to conduct the final step of the plan, which required the Plaintiff to actually perform lab experimentation. Based on his own observations and those of the Plaintiff's co-workers, Dr. Dennis was concerned that the Plaintiff was unable to perform lab work in a safe and conscientious manner. Specifically, the Plaintiff's physical stability and his memory were questioned by Dr. Dennis and the Plaintiff's co-workers.

In an effort to facilitate the Plaintiff's goal of returning to his prior job responsibilities, the Defendant provided the Plaintiff with physical and rehabilitation therapy. The Defendant even approved and paid for additional therapy beyond what its medical insurance covered. In addition, the Defendant made lab technicians available to the Plaintiff so that they could do experimentation under the Plaintiff's supervision. Nonetheless, the Plaintiff continued to insist that he be allowed to return to his lab work.[3]

In an effort to determine whether or not the Plaintiff could safely return to his lab work, the Defendant commissioned Dr. Ann Middaugh, an occupational medicine physician, to evaluate the Plaintiff. Dr. Middaugh found that the Plaintiff suffered permanent neurological impairment, including gait disturbance, memory problems, and cognitive dysfunction. In addition, Dr. Middaugh referred the Plaintiff to Dr. Edward Barrett for a comprehensive neurological evaluation. After two months of evaluation, including on-site observation and a battery of neurological testing conducted by Dr. Barrett[4], Dr. Middaugh concluded that the Plaintiff was unfit to conduct bench chemistry in a reliable and safe manner. *See* Defendant's Exhibit FF.

Upon considering Dr. Middaugh's evaluation, the Defendant placed the Plaintiff on a short-term disability leave of absence on May 27, 1993. After several months of the Plaintiff's receiving short-term disability benefits, the Defendant sought to obtain long-term disability status for the Plaintiff from its long-term disability insurance carrier, UNUM Life Insurance Company ("UNUM"). In order for the Plaintiff to be eligible for long-term disability benefits, he had to establish that he was disabled and was unable to return to work. The Plaintiff and his primary physician, Dr. Anthony, submitted statements regarding his disability.[5] In addition, UNUM obtained an independent medical evaluation from Dr. Robert Tureen, a neurologist who had previously examined and evaluated the Plaintiff. Dr. Tureen stated in his report that, based on his evaluation, he "could not confidently recommend [that the Plaintiff] return to his former position as a bench chemist." *See* Defendant's Exhibit II. Based on the information presented to UNUM, the Plaintiff secured and subsequently received long-term disability benefits from UNUM.

On or about September 6, 1994, the Plaintiff applied for Social Security Disabili-

---

3. The record indicates that, on one occasion, the Plaintiff conducted lab work despite the fact that he did not have the Defendant's permission to do so. On April 29, 1993, the Plaintiff attempted to conduct a lab experiment. In executing the experiment, the Plaintiff failed to follow a safety procedure. While the Plaintiff questions whether his actions created a safety hazard, he does not deny conducting the experiment or failing to follow the safety procedure in question.

4. In his report, Dr. Barrett stated that he "seriously question[ed]" whether the Plaintiff could

return to bench chemistry. *See* Plaintiff's Exhibit V.

5. The Plaintiff makes much of the fact that he and his physician did not admit on the UNUM application that the Plaintiff was disabled, but merely stated that the Defendant believed that he was unable to work in his former capacity. However, as will be discussed *infra,* this distinction does not demonstrate that summary judgment on behalf of the Defendant is inappropriate.

ty Benefits, at the request of UNUM. UNUM requested that he apply for such benefits because, if the Plaintiff was eligible, UNUM would be entitled to a set-off for the amount of Social Security benefits received by the Plaintiff. In support of the Plaintiff's application, the Plaintiff certified that he had become "unable to work because of [his] disabling condition," and that he was "still disabled." *See* Defendant's Exhibit JJ. In the signed application, the Plaintiff also certified that he knew that "anyone who makes or causes to be made a false statement or representation of material fact in [the] application ... commits a crime punishable under Federal law by fine, imprisonment or both," and that "all information [he had] given in connection with this claim is true." *See id.* Further, the Plaintiff secured a statement from Dr. Anthony in support of his Social Security disability application. *See* Defendant's Exhibit LL. Attached to Dr. Anthony's statement was a copy of Dr. Middaugh's report, in which she concluded that the Plaintiff was unable to return to work as a bench chemist. *See id.*

In addition to this material, the Social Security Administration ("SSA") obtained the records and reports of several other physicians who evaluated the Plaintiff, and even solicited the opinion of Dr. Kuldip Singh, who had not previously examined or evaluated the Plaintiff's condition. *See* Exhibit OO. Again, Dr. Singh's evaluation supported the Plaintiff's sworn statement that he was unable to work as a bench chemist. Upon reviewing the information submitted on behalf of the Plaintiff, the SSA concluded that the Plaintiff was disabled due to "organic mental disorders," and awarded disability benefits to the Plaintiff. *See* Defendant's Exhibit PP. The Plaintiff's disability payments became effective in June 1995, and benefits were paid retroactively to November 23, 1993. The Plaintiff continues to receive Social Security benefits to date.

In October, 1995, UNUM notified Tastemaker that the Plaintiff would not be eligible for long-term disability benefits beginning November 23, 1995. UNUM stated that, although it did not appear as though the Plaintiff was able to perform his prior job at Tastemaker, "he did possess transferrable skills that he could utilize to perform other occupations...." *See* Defendant's Exhibit KK.[6] Based on its conclusion that the Plaintiff was unable to return to his position as a bench chemist, the Defendant terminated the Plaintiff's employment effective November 23, 1995.

### Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

Summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate

---

**6.** UNUM also cited the Plaintiff and his wife's alleged refusal to participate in a job simulation in order to determine whether he was capable of returning to bench chemistry, unless the simulation was performed at Tastemaker. The Plaintiff disputes this allegation, and states that he had agreed to participating in a simulation, whether at Tastemaker or elsewhere. While this issue of fact remains in dispute, it is not material in determining whether the Defendant's motion for summary judgment is well taken. *See* discussion *infra* at FN18.

time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. *Id.; Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* In addition, a "mere . . . scintilla of evidence in support of the plaintiff's position will be insufficient" for the Plaintiff to survive a motion for summary judgment, and "there must be evidence on which [a] jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### Plaintiff's Discrimination Claim

To recover for a claim of discrimination under the ADA, the Plaintiff must show that: 1) he is an individual with a disability; 2) he is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap. *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1178 (6th Cir.1996). In the instant case, the Defendant does not deny that it relied on the Plaintiff's disability in deciding to place him on disability leave and to discharge him. The Sixth Circuit Court of Appeals has set forth the applicable standard for this type of discrimination case in *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173 (6th Cir.1996). In *Monette,* the Court recognized that the burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–803, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973), is not appropriate when the Defendant terminates an

employee because the employee's disability prevents him from being qualified for his job. *See Monette,* 90 F.3d at 1182.[7] Instead, the typical inquiry in cases where the employer relies on the employee's disability is whether the employee remains "otherwise qualified" to perform the job. *See id.* In this case, the Plaintiff's alleged qualification for his former position is the central issue, and the Plaintiff bears the burden of demonstrating that he was qualified at the time of the adverse employment decision. *See id.* at 1184.

The Defendant offers several different theories in support of its motion for summary judgment regarding the Plaintiff's ADA discrimination claim. The first theory is that the Plaintiff is precluded from claiming that he was qualified for his former job position because of his statements to the long-term disability insurer (UNUM) and the SSA, in which he claimed that he was disabled and unable to work. Because the Court finds this argument to be determinative, it need not consider the Defendant's other arguments that summary judgment is appropriate.

A growing number of federal courts are being faced with the question of whether a plaintiff's representations to an insurance carrier or the SSA that he is disabled and unable to work later preclude him from successfully bringing an ADA claim. Indeed, the vast majority of courts which have considered this issue have held that such representations preclude a plaintiff from later demonstrating that he was qualified to perform his prior job duties. *See McNemar v. Disney Store, Inc.,* 91 F.3d 610, 618–19 (3d Cir.1996) (quoting the district court's finding

---

7. The *Monette* Court recognized that, pursuant to *McDonnell Douglas,*

a plaintiff may establish a prima facie case of discrimination by establishing that: 1) she is a member of a protected class; 2) she is qualified for the position; 3) she suffered an adverse employment decision; and 4) she was replaced by a member outside the protected class. . . . If the plaintiff is able to establish a prima facie case of discrimination, the burden of production then shifts to the employer to assert a legitimate, non-discriminatory justification for its action. . . . If the employer fails in this burden of production, the plaintiff need not introduce any other evidence of discrimi-

nation, and a mandatory inference of discrimination must be drawn by the fact finder. . . . However, once the employer has come forward with evidence of a legitimate reason for its action, the inference shifts from a mandatory one the fact finder must draw, to a permissive one the fact finder may draw, and the burden shifts back to the employee to establish that the employer's proffered explanation is a mere pretext for unlawful discrimination.

*See Monette,* 90 F.3d at 1179 (citations omitted). Again, this analysis is inappropriate when the employer admits to having relied upon the plaintiff's disability in making the adverse employment decision. *See id.*

that "most federal courts agree that an employee who represents on a benefits application that he is disabled is judicially estopped from arguing that he is qualified to perform the duties of the position involved."); *Griffith v. Wal–Mart Stores, Inc.*, 930 F.Supp. 1167, 1170 (E.D.Ky.1996) ("The majority of federal courts faced with the issue have ruled that an ADA plaintiff who has represented that he or she is disabled in order to obtain benefits under Long–Term Disability ... insurance, social security, or workers' compensation is not a 'qualified individual' under the ADA as a matter of law."). While the Sixth Circuit Court of Appeals has yet to address the issue, this Court finds the reasoning behind the majority trend to be compelling and the doctrine to be applicable in this case.

Courts which have precluded plaintiffs from showing they were qualified for prior job responsibilities because of representations of disability to the SSA or an insurance carrier have framed the doctrine in a number of ways. *See, e.g., McNemar*, 91 F.3d at 617–18 (applying the doctrine of judicial estoppel); *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 583 (1st Cir.1992) (treating the plaintiff's statements regarding disability to insurance carriers as binding admissions); *Griffith*, 930 F.Supp. at 1169–70 (E.D.Ky. 1996) (stating simply that the Plaintiff's representations in his application for social security disability benefits precluded him from satisfying the elements of his *prima facie* case); *Morton v. GTE North Inc.*, 922 F.Supp. 1169, 1182 (N.D.Tex.1996) (discussing the issue in terms of whether the plaintiff had standing to bring an ADA claim). Regardless of how courts have categorized the doctrine, the principle underlying its application is the same: the Plaintiff "cannot speak out of both sides of [his] mouth with equal vigor and credibility" before the Court. *Reigel v. Kaiser Found. Health Plan*, 859 F.Supp. 963, 969 (E.D.N.C.1994); *accord McNemar*, 91 F.3d at 618. Specifically, a plaintiff cannot claim under oath that he is

disabled in order to procure permanent disability benefits, and then later claim that he was not disabled for the purposes of proving he was "otherwise qualified" under the ADA.

In applying this doctrine, courts have varied regarding the scope of its preclusive effect. Some courts have held that the plaintiff is strictly estopped from attempting to prove that he was qualified. *See, e.g., Cheatwood v. Roanoke Indus.*, 891 F.Supp. 1528, 1538 (N.D.Ala.1995) (finding that the plaintiff was bound by his prior testimony and therefore unable to assert that he could perform the essential functions of his job); *Garcia–Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547, 555 (D.Kan.1995) (finding that the plaintiff was estopped from claiming that he was qualified). Other courts have stated that a plaintiff's representations to insurance carriers or the SSA are merely one factor, albeit an important one, to be considered in determining whether the plaintiff was qualified. *See, e.g., Morton v. GTE North Inc.*, 922 F.Supp. at 1182 (holding that the plaintiff's representations were only one factor to be considered in determining whether she was qualified); *Dockery v. North Shore Medical Ctr.*, 909 F.Supp. 1550, 1559 (S.D.Fla.1995) (finding that the plaintiff's representations were not dispositive, though finding them to be relevant factors in determining whether summary judgment should be granted).[8] Finally, a number of courts have applied the doctrine without stating whether or not the plaintiff's representations strictly precluded the plaintiff from establishing qualification, or whether they were just a factor to be considered. *See, e.g., Reigel*, 859 F.Supp. at 969 (merely stating that the plaintiff failed to meet her burden of proving that she was qualified).

This Court need not determine the appropriate scope of the preclusive effect of the doctrine in this case. Regardless of whether the Plaintiff's representations to UNUM and the SSA are dispositive or merely substantial factors in determining whether the Plaintiff

---

8. To be sure, the vast majority of courts which stated that the plaintiff's representations were only one factor to be considered ultimately found that the plaintiffs could not meet their burden of proving they were otherwise qualified. *See, e.g., Morton*, 922 F.Supp. at 1183 (finding that the plaintiff was not qualified as a matter of law); *Dockery*, 909 F.Supp. at 1559 ("[T]he fact that a plaintiff has made sworn statements that she is disabled will, most surely, hamper her ability to survive any motion for summary judgment.").

was qualified, the Court concludes that he has failed to establish his qualification as a matter of law.

In this case, the Plaintiff certified to the SSA that he had become "unable to work because of [his] disabling condition," and that he was "still disabled." *See* Defendant's Exhibit JJ. In the signed application, the Plaintiff also certified his knowledge that "anyone who makes or causes to be made a false statement or representation of material fact in [the] application ... commits a crime punishable under Federal law by fine, imprisonment or both," and that "all information [he had] given in connection with this claim is true." *See id.* In addition, the Plaintiff secured a statement from Dr. Anthony in support of his Social Security disability application. *See* Defendant's Exhibit LL. Attached to Dr. Anthony's statement was a copy of Dr. Middaugh's report, in which she concluded that the Plaintiff was unable to return to work as a bench chemist. *See id.*[9] By certifying under penalty of perjury that he was disabled and unable to work, the Plaintiff has seriously "hampered h[is] ability to survive [a] motion for summary judgment." *Dockery,* 909 F.Supp. at 1559.

Further, the record suggests, and the Plaintiff does not refute, that he continues to receive SSA benefits to date. Every time the Plaintiff cashes a check from the SSA, he ratifies his assertion that he is disabled and unable to work, and reaps the benefits of such representations. *See Simo v. Home Health & Hospice Care,* 906 F.Supp. 714, 721 (D.N.H.1995) (finding that, where the plaintiff had received over five years worth of government benefits, and continued to "reap[ ] the benefits of her past representations of total disability," she could not advance a claim for disability discrimination); *Reiff v. Interim Personnel, Inc.,* 906 F.Supp. 1280, 1292 (D.Minn.1995) ("[T]he fact remains that [the Plaintiff] continued to accept the checks from [an insurance carrier] that explicitly hinged on his previous representations that he was unable to perform the material and substantial functions of his job," and therefore the Plaintiff could not argue he was qualified). In light of the Plaintiff's continued receipt of Social Security benefits, this Court doubts that a reasonable jury could conclude that the Plaintiff was qualified to work in his former capacity.[10]

In addition to the Plaintiff and his physician's representations to the SSA, the Defendants have produced a mountain of evidence which suggests that the Plaintiff was no longer qualified to perform his former job responsibilities. This evidence includes the Plaintiff's application for long-term disability benefits, UNUM and the SSA's subsequent approval and payment of such benefits, the records and reports of several physicians who evaluated the Plaintiff, and statements by the Plaintiff's co-workers that he was no longer able to function effectively. This evidence, along with the Plaintiff's sworn statements and his primary physician's report to the SSA, lead the Court to conclude that no reasonable jury could find that the Plaintiff was qualified for his prior employment position. *Cf. August,* 981 F.2d at 582 (finding that "no reasonable fact finder could conclude that ... [the Plaintiff] was a qualified [disabled] person within the meaning of" a

---

9. In his memorandum, the Plaintiff attacks the credibility of Dr. Middaugh's evaluation and report, suggesting that she was not qualified to determine whether the Plaintiff was able to work as a bench chemist. *See* Plaintiff's Memorandum at 12–14. However, the Plaintiff's physician did not appear to be concerned about Dr. Middaugh's qualifications when he attached her report to his statement to the SSA in an effort to secure benefits for his patient. *See* Defendant's Exhibit LL.

10. The Plaintiff's continued receipt of Social Security benefits highlights the implausibility of the Plaintiff's argument that he could be eligible for such benefits and qualified to perform his former job responsibilities at the same time. If the Plaintiff were successful in his discrimination claim and were to be reinstated at Tastemaker, surely he would not be entitled to continue receiving Social Security benefits; otherwise, the Plaintiff would receive a "double-recovery." Further, if he were awarded back pay, the Plaintiff would be required to compensate the SSA for past benefits he received. This very plausible scenario demonstrates the logical inconsistency with the Plaintiff's position: if he should be required to pay back the Social Security benefits upon succeeding in a discrimination claims, how can he claim to be qualified and eligible for SSA benefits at the same time?

state statute which paralleled the ADA); *Kennedy v. Applause, Inc.*, 1994 WL 740765, *6 (C.D.Cal.), *aff'd* 90 F.3d 1477 (1996) (stating that, from the totality of the circumstances in the case, no reasonable jury could conclude that the Plaintiff was qualified).

The Plaintiff proffers a number of arguments in support of his position that his representations to UNUM and the SSA should not preclude his ADA claim. First, the Plaintiff argues that his representations to UNUM and the SSA are merely a factor to be considered in determining whether or not he remained qualified to act as a bench chemist, rather than being dispositive on the matter. However, this Court has already concluded that it need not determine with precision the scope of preclusivity that the Plaintiff's statements have on his claim of qualification.[11] Regardless of whether the Plaintiff's representations to the SSA strictly preclude the Plaintiff from establishing his qualification, or whether they are instead a substantial factor, the Court concludes that the Plaintiff has failed to establish his qualification as a matter of law.

Secondly, the Plaintiff cites the Seventh Circuit Court of Appeals' decision in *Overton v. Reilly*, 977 F.2d 1190 (7th Cir.1992), as support for his contention that he was eligible for Social Security benefits while, at the same time, being qualified for his former job position. In *Overton*, the plaintiff was granted Social Security benefits based on the SSA's finding that the claimant met the criteria for a listed disability, without having inquired into his ability to find work within the economy generally. In addition, the Court found that the plaintiff produced evidence that his work was adequate and well received. *See id.* at 1196. On these facts, the Court concluded that a material issue existed as to whether the plaintiff was qualified for his prior position. *See id.* In addition, the *Overton* court stated in dicta that, "even if a finding of disability could have preclusive effect in a private lawsuit, . . . such a finding is consistent with a claim that the disabled person is 'qualified'. . . ." The Court based this conclusion on the fact that, in determining eligibility for Social Security benefits, the SSA inquires into an applicant's ability to find work in the national economy, rather than his ability to perform a specific job. *See id.* The Court further reasoned that the SSA's generalized inquiry could not be construed as a judgment that the plaintiff was no longer qualified to perform his job. *See id.*

Aside from finding the *Overton* decision to be distinguishable on its facts [12], this Court concludes that the *Overton* rationale is not compelling. While it is true that the SSA makes a generalized inquiry into the applicant's ability to find work in the national economy, *see Overton,* it appears as though

---

11. The Plaintiff cites a number of cases which stand for the proposition that the plaintiff's representations are only one factor to be considered in determining qualification. However, in the majority of those cases, the courts ultimately concluded that the plaintiffs failed to establish their *prima facie* case. *See* cases cited, *supra,* at FN8. Further, most of these cases suggest that the plaintiff's representations were a substantial factor in the courts' determination that the plaintiffs were not qualified. *See, e.g., Dockery,* 909 F.Supp. at 1559 ("[T]he fact that a plaintiff has made sworn statements that she is disabled will, most surely, hamper her ability to survive any motion for summary judgment."); *Pegues v. Emerson Elec. Co.,* 913 F.Supp. 976, 980–81 (N.D.Miss.1996) ("Although the court does not believe that a finding of disability by the . . . [SSA] necessarily forecloses an ADA claim, . . . the substance of [the plaintiff's] testimony and representations . . . and the subsequent findings by both administrative bodies . . . pose the greatest hurdle for" the plaintiff).

12. A number of other courts have distinguished *Overton* on its facts. *See, e.g., McNemar,* 91 F.3d at 619 (distinguishing *Overton* on its facts and questioning the soundness of the decision for reasons other than those raised by this Court); *Griffith,* 930 F.Supp. at 1172–73 (distinguishing *Overton* on its facts); *Reiff,* 906 F.Supp. 1280, 1290–91 (distinguishing *Overton* on its facts). The *Overton* case is distinguishable from the instant case because the plaintiff in Overton automatically qualified for Social Security benefits. *See id.* at 1196. Therefore, the SSA did not conduct an individualized inquiry into the plaintiff's employability. *See id.* However, in the instant case, the SSA not only conducted an individualized inquiry into the Plaintiff's employability, it did so entirely within the context of his ability to perform as a bench chemist. *See Reiff,* 906 F.Supp. 1280, 1290–91 (recognizing that *Overton* is inapplicable where the plaintiff produces evidence of his inability to work at his

this broader inquiry will often encompass the narrower inquiry as to whether a plaintiff is qualified to do a specific job. This is particularly true in the present case, where the Plaintiff's former position was that of a Ph.D. chemist. Further, even if this "greater includes the lesser" argument is not true in every case, the *Overton* court failed to address the underlying problem of a plaintiff's achieving a double recovery if he receives SSA benefits yet also succeeds on his ADA claim.[13] Therefore, the Plaintiff's citation of *Overton* and its progeny, which composes a small minority of the persuasive authority, does not render the Defendant's motion for summary judgment meritless.

Third, the Plaintiff asserts that his statements to UNUM and the SSA should not preclude his ADA claim because he qualified his statements regarding his disability on occasions. Specifically, the Plaintiff highlights the fact that both he and his doctor stated in his application to UNUM that the *Defendant* believed that the Plaintiff was disabled and unable to work. In addition, the Plaintiff calls to the Court's attention instances in which, after having sworn under oath that he was disabled, the Plaintiff told the SSA that he felt capable of performing his prior job duties. Again, the Court finds the Plaintiff's contentions to be of no avail.

First, in considering the Plaintiff's statements regarding his disability, the Court has deliberately focused more heavily on his SSA application than his application with UNUM. This is true because the UNUM application does not appear to have been made under oath, while the SSA application was. *Cf. McNemar*, 91 F.3d at 615 (emphasizing the importance of the fact that the plaintiff's statements regarding disability were made under oath); *Griffith*, 930 F.Supp. at 1168–69

(same). Indeed, the UNUM application does provide additional evidence of the Plaintiff's disability. However, any equivocation by the Plaintiff or his doctor in the UNUM application cannot preclude summary judgment on behalf of the Defendant.

Second, the Plaintiff's subjective statements to the SSA regarding his ability to perform his prior job functions, which were made after his sworn statement of disability, cannot defeat the Defendant's motion for summary judgment. First, the Plaintiff's subjective belief as to his ability to perform his prior job functions is highly suspect. The nature of his injury, in addition to the zeal with which the Plaintiff sought to return to the lab, demonstrate that his subjective assessment of his ability to perform is highly suspect.[14] In addition, the mere fact that the Plaintiff later contradicted his sworn SSA application cannot establish that he was qualified for his former position. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996) (affirming the district court's conclusion that no material issue of fact remained despite the plaintiff's contradictory statements regarding qualification in her deposition testimony, and concluding that her contradictory deposition testimony did not present a sufficient disagreement to require submission to a jury).

The Plaintiff also argues that the Defendant's motion for summary judgment is improper because the Defendant and UNUM provided the impetus for the Plaintiff's having applied for long-term disability and Social Security benefits. The Plaintiff appears to argue that he should not be held responsible for his representations to UNUM and the SSA because he sought the benefits at the

former job in order to secure Social Security benefits).

**13.** This Court cannot envision any forum allowing a plaintiff to be reinstated or compensated for lost wages pursuant to an ADA claim, while at the same time receiving Social Security benefits. This being the case, the notion that a plaintiff can be eligible for Social Security benefits while also being qualified to perform his prior work duties seems analytically unsound. *See* discussion, *supra*, at FN10.

**14.** While the Plaintiff's subjective opinion regarding his qualification is suspect, this fact does not

detract from his attempting to speak out of both sides of his mouth. The Plaintiff claimed under oath that he was disabled and elicited a report from his physician to that effect in order to secure SSA benefits. Despite his later claims that he was able to perform his previous job responsibilities, the SSA considered substantial evidence to the contrary and concluded that he was unable to do so. Under these circumstances, the SSA was in a much better position to determine his qualification, and it concluded that the Plaintiff was no longer able to work.

Defendant and UNUM's behest.[15] However, the fact that UNUM requested or required the Plaintiff to seek Social Security benefits does not relieve the Plaintiff from his obligation to make true statements under oath. Further, the Court cannot censure UNUM for having requested or required the Plaintiff to apply for Social Security benefits when it was entitled to a set-off[16] if such benefits were awarded.[17]

In sum, the Court concludes that no reasonable juror could conclude that the Plaintiff was qualified to perform his duties as a bench chemist at Tastemaker. The defendant has produced overwhelming evidence that the Plaintiff was not qualified.[18] This evidence, along with the Plaintiff's sworn statements to the SSA, prove too much for a reasonable juror to find that the Plaintiff was qualified. Therefore, the Plaintiff has failed to establish his *prima facie* case, and the Defendant is entitled to summary judgment on the Plaintiff's discrimination claim.

Finally, the Plaintiff argues that an application of the judicial estoppel doctrine in this

**15.** The Plaintiff raises this argument.in the context of the doctrine of judicial estoppel. In applying this doctrine, some courts have required the party seeking its application to demonstrate that the other party presented inconsistent positions in bad faith. *See McNemar,* 91 F.3d at 618. However, a number of courts have applied the doctrine in question without invoking judicial estoppel. *See* discussion *supra* at 901–02. Indeed, this Court need not invoke the doctrine of judicial estoppel in determining as a matter of law that the Plaintiff was no longer qualified. *See* discussion *infra* at 906–07.

**16.** The Defendant asserts, and the Plaintiff fails to refute, that UNUM would be entitled to a set-off for the amount of benefits the Plaintiff received from the SSA. The record demonstrates that the Plaintiff did receive "overlapping" benefits from UNUM and the SSA for some time. However, the Plaintiff failed to notify UNUM of this fact or to reimburse UNUM for the amount he received from the SSA. Apparently, the Plaintiff assumes that he is entitled to a double recovery under the circumstances, and perhaps a triple recovery if his ADA claim is successful.

**17.** While the record is unclear on this point, the Court also suspects that Tastemaker had legitimate business reasons for seeking to have UNUM pay long-term benefits to the Plaintiff rather than having the Plaintiff remain on short-term disability.

**18.** As stated above, the Plaintiff bears the burden of establishing that he was qualified to perform his prior job functions. *See Monette,* 90 F.3d at 1182. In spite of overwhelming evidence that the Plaintiff was not qualified, the Plaintiff offers little evidence to the contrary. The main thrust of the Plaintiff's argument for qualification is that the Defendant failed to reasonably accommodate him, as required by .the ADA. *See id.* at 1183. However, the Plaintiff bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable. *Id.* The Plaintiff has failed to identify evidence within the voluminous record that demonstrates that he proposed any type of accommodation to the Defendant.

Instead, the Plaintiff cites the suggestions of examining physicians that, ideally, the Plaintiff should be given the opportunity to do job testing to determine whether or not he could still function as a bench chemist. Both parties mistakenly identify this issue as one of accommodation. However, this evidence relates instead to whether the Plaintiff was qualified.

Admittedly, there are questions of fact as to the parties willingness to conduct testing under conditions which were acceptable to both of them. Indeed, it would have been preferable for the parties to have come to an agreement and had the testing done. To be sure, the record suggests that neither party was entirely forthcoming in this regard. However, in light of the Plaintiff's sworn statements to the SSA, the numerous medical records and reports, the conclusions of UNUM and the SSA that the Plaintiff was disabled and their subsequent awards of benefits, and the Plaintiff's co-workers' statements regarding his impairments, the Court concludes that the parties' failure to agree upon job testing is not a material issue in this case.

Finally, the Plaintiff proffers the testimony of Dr. Hans Zimmer, a Ph.D. professor of chemistry at the University of Cincinnati, as evidence of his qualification. Nearly four years after his accident, the Plaintiff conducted chemistry experiments in Dr. Zimmer's lab in an effort to prove that he was still capable of performing bench chemistry. The Plaintiff contends that Dr. Zimmer's favorable review of his efforts in the lab establishes his *prima facie* case regarding qualification. However, the report of Dr. Zimmer must be examined in the context of all the contrary evidence produced in this case, both by the Defendant and the Plaintiff, which suggests that the Plaintiff was not qualified. It is well established that, in considering a motion for summary judgment, "a mere ... scintilla of evidence in support of the plaintiff's position [is] insufficient," and "there must be evidence on which [a] jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. Under the circumstances of this case, the Plaintiff has failed to meet his burden.

case would be inappropriate pursuant to applicable Sixth Circuit precedent. While other courts have utilized the judicial estoppel doctrine to preclude a plaintiff from making inconsistent claims regarding disability[19], this Court agrees that it is unclear whether the doctrine as defined by the Sixth Circuit may be extended to this case. The Sixth Circuit Court of Appeals has recognized that, in order to invoke judicial estoppel, "a party must show that the opponent took a contrary position under oath in a prior *proceeding* and that the prior position was accepted by the *court.*" *Teledyne Industries, Inc. v. N.L.R.B.,* 911 F.2d 1214, 1218 (6th Cir.1990) (emphasis added). The Plaintiff suggests that, because the Plaintiff's applications with the SSA and UNUM were not part of a "proceeding" in a "court," that the judicial estoppel doctrine does not apply. However, regardless of whether the doctrine of judicial estoppel is applicable in this case, the Plaintiff cannot demonstrate that its theoretical underpinnings are inapplicable. Indeed, a number of courts have applied the doctrine at issue under analogous legal theories. *See, e.g., August,* 981 F.2d at 583 (treating the plaintiff's statements as binding admissions); *Griffith,* 930 F.Supp. at 1169–70 (E.D.Ky. 1996) (where plaintiff's representations "precluded" him from satisfying the elements of his *prima facie* case); *Morton,* 922 F.Supp. at 1182 (N.D.Tex.1996) (discussing the issue in terms of whether the plaintiff had standing to bring an ADA claim). In sum, the Court finds the doctrine in question to be well reasoned and applicable to the instant case, regardless of its title.

### Plaintiff's Retaliation Claim

In his retaliation claim, the Plaintiff avers that the Defendant "failed to facilitate [his] rehabilitation by refusing to consult with physicians offered by [the] Plaintiff who were of the opinion that [he] might be able to perform the essential elements of his job with a reasonable accommodation." Complaint at ¶ 29. The Plaintiff further alleges that the Defendant's failure to act, as well its termination of the Plaintiff's employment,

was motivated by the Plaintiff's retention of legal counsel. *Id.* at ¶ 30. The Plaintiff contends that these acts or failures to act constitute unlawful retaliation under the ADA.

■ In order to establish a *prima facie* case of retaliation, the Plaintiff must demonstrate: (1) that he was engaged in a statutorily protected activity; (2) that he was the subject of an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment action. *See Johnson v. Department of Health and Human Serv.,* 30 F.3d 45, 47 (6th Cir.1994) (setting forth the retaliation standard in a race and gender discrimination case); *Patterson v. City of Seattle,* 1996 WL 528267, *3 (9th Cir.) (unpublished opinion) (applying the same standard in an ADA retaliation case). If the Plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the Defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. *See Johnson,* 30 F.3d at 47. Finally, if the Defendant offers a legitimate reason, the burden shifts back to the Plaintiff to demonstrate that the Defendant's explanation is pretext for retaliation. *See id.* However, the ultimate burden of persuasion always remains with the Plaintiff. *See id.*

■ In the instant case, the Plaintiff first asserts as an adverse employment action the Defendant's "refusing to consult with physicians offered by [the] Plaintiff who were of the opinion that [he] might be able to perform the essential elements of his job with a reasonable accommodation." The Plaintiff asserts this element of his retaliation claim in terms of the Defendant's obligation to provide reasonable accommodation. *See generally Monette,* 90 F.3d at 1182 (setting forth legal standards for "reasonable accommodation"). Indeed, the definition of a Plaintiff's being "otherwise qualified" under the ADA statute encompasses Plaintiffs who would be qualified if provided "reasonable accommodation." *See* 42 U.S.C. § 12112(b)(5)(A). How-

---

**19.** *See, e.g., McNemar,* 91 F.3d at 617 (where the First Circuit Court of Appeals rejected the defendant's argument that the doctrine of judicial es-

toppel did not apply, finding that the "application of judicial estoppel is not limited in the formulaic manner urged by" the defendant).

ever, the Plaintiff "bears the initial burden of proposing an accommodation and showing that [it] is objectively reasonable." *Monette*, 90 F.3d at 1183.

In the instant case, the Plaintiff has failed to identify one shred of evidence that he or his physicians proposed specific actions which would enable the Plaintiff to return to working in a chemistry lab. Instead, the Plaintiff offers letters and requests that he be tested to see whether he could continue to do lab work. These requests and the Defendant's responses to them, at best, relate to whether or not the Plaintiff was qualified to work as a bench chemist. The Court has already disposed of the qualification issue in the first section of this Order. Furthermore, the Defendant was under no duty to accommodate the Plaintiff because the Plaintiff failed to identify an accommodation which would allow him to continue working as a bench chemist. Therefore, the Defendant's alleged failure to accommodate the Plaintiff cannot satisfy the "adverse employment decision" requirement of the Plaintiff's retaliation claim.[20]

Finally, the Plaintiff alleges that his termination was an adverse employment action which was causally linked to his engaging in protected activity. However, in order for the Plaintiff to succeed, he must demonstrate that his engaging in protected activity was a "significant factor," not merely a "causal link," in causing the adverse employment action. *Polk v. Yellow Freight System, Inc.*, 801 F.2d 190, 199 (6th Cir.1986). In the instant case, the Plaintiff has failed to meet this burden.

The Plaintiff filed a complaint with the Equal Employment Opportunity Commission on November 19, 1993. He retained counsel regarding this case in the spring of 1994. Yet, the Plaintiff was not terminated until November 23, 1995. The Plaintiff has failed to produce any evidence that his termination was related to either of the protected activities in which he engaged. Rather, the record demonstrates that the Plaintiff's termination became effective on the date that his long-term disability insurance benefits terminated. In absence of any evidence to the contrary, the Court can only conclude that his termination was causally connected to the termination of his insurance benefits, not the Plaintiff's participation in protected activity. Therefore, the Plaintiff's retaliation claim regarding the termination of his employment also fails.

In sum, the Plaintiff has failed to establish his *prima facie* case for a claim of retaliation, and the Defendant is entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, the Defendant is entitled to summary judgment on his ADA claims. Having dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). Thus, the Defendant's motion for summary judgment (Doc. 54) is hereby **GRANTED.** In addition, all other motions pending before the Court in this case are hereby deemed **MOOT,** and this case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

---

**20.** Despite the Plaintiff's claims to the contrary, the record is replete with the Defendant's substantial efforts to facilitate the Plaintiff's return to work. For example, the Defendant continued to retain the Plaintiff during the time when he indicated a complete lack of engagement or interest in chemistry, provided him with rehabilitation therapy beyond what its insurance carrier would cover, and provided lab technicians to perform experiments under his supervision. Only after these substantial efforts to accommodate the Plaintiff was he finally placed on disability leave. In addition, there is no evidence in the record which suggests that the Defendant would not have continued to employ the Plaintiff in some capacity, had he not strenuously insisted upon being returned to the chemistry lab. Under these circumstances, the Court finds the Plaintiff's claim that he did not receive adequate accommodation to be untenable.